UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK L. BOWEN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>　　　　Defendant. | No.  2:14-cv-0215 DAD<br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment.[1]  For the reasons explained below, plaintiff's motion is denied, defendant's cross-motion is granted, and the decision of the Commissioner of Social Security ("Commissioner") is affirmed.

PROCEDURAL BACKGROUND

On August 27, 2010, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on April 26, 2005.  (Transcript ("Tr.") at 25, 217-29.)  Plaintiff's applications were denied initially, (id. at 150-53), and upon

---

[1]  Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c).  (See Dkt. Nos. 3 & 10.)

reconsideration. (Id. at 161-63.)

Thereafter, plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on September 17, 2012. (Id. at 43-71.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 43-44.) In a decision issued on September 24, 2012, the ALJ found that plaintiff was not disabled. (Id. at 37.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since April 26, 2005, the alleged disability onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has severe impairments related to chronic back pain post lumbar discectomy and degenerative disc disease of the cervical spine (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform at least sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). He can lift and carry at the light exertion level, that is, he can lift and carry up to 10 pounds frequently and up to 20 pounds occasionally. He should never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs. He would need to change position from sitting to standing for a few minutes every half hour. He should avoid concentrated exposures to vibration.
>
> 6. The claimant is unable to perform any of his past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on December 14, 1975 and he was 29 years old, which is defined as a "younger individual age 18-44," on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has a limited education and he is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 26, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 27-36.)

On November 25, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's September 24, 2012 decision. (Id. at 4-6.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on January 23, 2014.

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

/////

3

>Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
>Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
>Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled. If not, proceed to step five.
>
>Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In his pending motion plaintiff asserts the following two principal claims:   (1) the ALJ improperly rejected plaintiff's own subjective testimony; and (2) the Vocational Expert's ("VE") testimony conflicted with the Dictionary of Occupational Titles ("DOT").[2]  (Pl.'s MSJ (Dkt. No. 16) at 4-20.[3])

**I.   Plaintiff's Subjective Testimony**

Plaintiff argues that the ALJ erred by rejecting plaintiff's testimony concerning the severity of his impairments.  (Id. at 9-20.)

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

>To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has

---

[2] The court has reordered plaintiff's claims for purposes of efficiency.

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

> presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ found that plaintiff's "allegations of disabling pain and limitations" were "not consistent with objective findings on examination after his surgery in August 2005," or the reports and opinions of a treating physician and two examining physicians. (Tr. at 30.) The ALJ's decision then discussed, in detail, the items of evidence and medical opinions that contradicted plaintiff's testimony. (Id. at 30-33.) Nonetheless, plaintiff argues that "a rejection

5

1   of a claimant's testimony based on a lack of objective evidence is always legally insufficient."
2   (Pl.'s MSJ (Dkt. No. 16) at 13.)

3   It is true that "after a claimant produces objective medical evidence of an underlying
4   impairment, an ALJ may not reject a claimant's subjective complaints based *solely* on a lack of
5   medical evidence to fully corroborate the alleged severity." Burch v. Barnhart, 400 F.3d 676, 680
6   (9th Cir. 2005) (emphasis added).  Here, the ALJ appears to have relied on evidence that
7   affirmatively contradicted plaintiff's testimony, not simply the lack of supporting evidence, in
8   rejecting plaintiff's subjective complaints.  See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007)
9   ("These inconsistencies [lab reports contradicting plaintiff's subjective complaint] constitute
10  significant and substantial reasons to find Parra's testimony less than completely credible.").

11  Even were that not the case, however, "[a]lthough lack of medical evidence cannot form
12  the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his
13  credibility analysis." Burch, 400 F.3d at 681.  Here, the ALJ's credibility analysis also
14  considered the fact that plaintiff's "treatment has been conservative and relatively minimal . . . ."
15  (Tr. at 30.)  In this regard, that ALJ noted that plaintiff's symptoms had essentially been treated
16  "with Vicodin at times," although plaintiff "reported obtaining relief from pain with medical
17  marijuana."  (Id. at 33.)  The ALJ also noted that "[t]he record contains no evidence of any
18  medical treatment," related to plaintiff's back pain or degenerative disc disease from February
19  2006 to June 7, 2008.  (Id. at 31.)

20  The ALJ may consider a plaintiff's conservative medical treatment, or lack of treatment,
21  in making a credibility determination.  See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir.
22  2008) ("The record reflects that Tommasetti responded favorably to conservative treatment
23  including physical therapy and the use of anti-inflammatory medication, a transcutaneous
24  electrical nerve stimulation unit, and a lumbosacral corset.  Such a response to conservative
25  treatment undermines Tommasetti's reports regarding the disabling nature of his pain."); Parra,
26  481 F.3d at 751 ("We have previously indicated that evidence of 'conservative treatment' is
27  sufficient to discount a claimant's testimony regarding severity of an impairment."); Burch, 400
28  /////

F.3d at 681 ("The ALJ is permitted to consider lack of treatment in his credibility determination.").

For all of the reasons stated above, the court finds that in this case the ALJ offered specific, clear and convincing reasons for rejecting plaintiff's subjective testimony about the severity of his symptoms. Accordingly, plaintiff's motion for summary judgment is denied as to this claim.

## II. Conflict With The DOT

Plaintiff also argues that the VE's testimony that the identified jobs "would allow for a sit/stand option" conflicted with the DOT and that this conflict was unexplained "warranting reversal." (Pl.'s MSJ (Dkt. No. 16) at 6.)

> SSR 00–4p unambiguously provides that "[w]hen a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [Dictionary of Occupational Titles ]." SSR 00–4p further provides that the adjudicator "will ask" the vocational expert "if the evidence he or she has provided" is consistent with the Dictionary of Occupational Titles and obtain a reasonable explanation for any apparent conflict.

Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (alterations in original).

The DOT, however, does not discuss the availability of a sit/stand option and "the Ninth Circuit has not considered whether a sit/stand option creates a conflict with any of the occupations in the DOT." Gilmour v. Colvin, No. 1:13-cv-0553 BAM, 2014 WL 3749458, at *8 (E.D. Cal. July 29, 2014). A number of courts have found that because the DOT does not discuss the availability of a sit/stand option, a VE's testimony regarding the availability of jobs with a sit/stand option does not raise an apparent conflict with the DOT. Id.; see also Forrest v. Commissioner of Social Sec., 591 Fed. Appx. 359, 364 (6th Cir. 2014) ("But the DOT does not discuss whether jobs have a sit/stand option . . . and therefore the vocational expert's testimony supplemented, rather than conflicted with, DOT job descriptions.")[4]; Zblewski v. Astrue, 302 Fed. Appx. 488, 494 (7th Cir. 2008) ("Because the DOT does not address the subject of sit/stand

---

[4] Citation to this unpublished Sixth Circuit opinion is appropriate pursuant to Sixth Circuit Rule 32.1.

options, it is not apparent that the testimony conflicts with the DOT.")[5]; <u>Strain v. Colvin</u>, No. CV 13-1973 SH, 2014 WL 2472312, at *2 (C.D. Cal. June 2, 2014) ("Because the DOT does not address the subject of sit/stand option, it is not apparent that the testimony of the VE conflicts with the DOT."); <u>McBride v. Commissioner of Social Sec.</u>, No. 2:12-cv-0948 CMK, 2014 WL 788685, at *8 (E.D. Cal. Feb. 25, 2014) ("The DOT does not address the issue of a sit/stand option for these positions, but there does not appear to be any conflict with plaintiff's need to sit after an hour of standing, as the VE testified.  Therefore, the undersigned sees no apparent conflict between the VE's testimony and the DOT."); <u>Conn v. Astrue</u>, 852 F.Supp.2d 517, 528 (D. Del. 2012) ("the VE's testimony and the DOT are not in conflict; the DOT simply does not address sit/stand options"); <u>Harvey v. Astrue</u>, No. 09-2038 CW, 2010 WL 2836817, at *14 (N.D. Cal. July 16, 2010) ("Where the DOT does not include information about a particular aspect of a job – such as the existence of a sit/stand option – it is proper to consult with a VE, as SSR 83–12 instructs.  Such testimony supplements the DOT, rather than conflicting with it.").

Moreover, at the September 17, 2012 administrative hearing the ALJ asked the VE about any "deviations" from the DOT and the VE explained that she made an "adjustment" to account for the diminished number of available jobs in light of plaintiff's need for a sit/stand option.  (Tr. at 68.)  After identifying the jobs of Sporting Good Assembly and Small Product Assembly, the VE testified

> And there are jobs in the local and national economy – where you sit all day.  There are jobs where you stand.  And there are those jobs where you can sit/stand.  But they're more limited.  So I would . . . . decrease the numbers to about 2,500 regionally and 250,000 in the national economy.

(<u>Id.</u> at 67.)  The VE identified the job of Electronics Worker and testified that, "in [her] vocational opinion, there are sufficient jobs in this industry with some sit/stand options, 1,200 regionally, 200,000 in the national economy."  (<u>Id.</u> at 68.)  A number of courts have found that were the VE has reduced the number of available jobs to account for the sit/stand option, any error stemming from such testimony is rendered harmless.  See <u>Flores v. Colvin</u>, 546 Fed. Appx.

---

[5] Citation to this unpublished Seventh Circuit opinion is appropriate pursuant to Seventh Circuit Rule 32.1.

638, 641 (9th Cir. 2013) (finding harmless error where "VE testified that although the DOT does not discuss a sit-stand option, his testimony was limited to positions with that option"); Buckner-Larkin v. Astrue, 450 Fed. Appx. 626, 628-29 (9th Cir. 2011) ("The vocational expert in this case found that the recommended jobs would allow for an at-will sit-stand option. The vocational expert noted that although the DOT does not discuss a sit-stand option, his determination was based on his own labor market surveys, experience, and research. Therefore, the conflict between the DOT and the vocational expert was addressed and explained by the vocational expert, and the ALJ addressed this in the decision."); Cole v. Astrue, 395 Fed. Appx. 387, 390 (9th Cir. 2010) ("Additionally, the expert testified that significant numbers of 'sit/stand option' cashier and small products assembler jobs existed that Cole could perform. The expert's testimony showed there were over 25,000 jobs in Washington state in these three categories combined. Any error was therefore rendered harmless.")[6]; Gilmour v. Colvin, No. 1:13-cv-0553 BAM, 2014 WL 3749458, at *8 (E.D. Cal. July 29, 2014) (finding harmless error where the VE considered the sit/stand option and reduced number of jobs available as part of that consideration); Herrera v. Colvin, No. EDCV 13-1734 SP, 2014 WL 3572227, at *9 (C.D. Cal. July 21, 2014) ("The VE thus rendered an expert opinion on the lack of occupational erosion caused by the sit/stand option as to the hand bander and table worker jobs. While the VE did not detail the reasons for this determination, she was not required to. Accordingly, the ALJ met his burden for obtaining persuasive evidence to support the deviation.").

Under the circumstances presented by the record in this case, the court finds that plaintiff has failed to demonstrate any non-harmless error. Accordingly, the court finds that plaintiff is also not entitled to relief with respect to this claim.

**CONCLUSION**

For all of the reasons stated above, the court finds that plaintiff is not entitled to summary judgment in his favor with respect to either of his arguments.

/////

---

[6] Citation to these unpublished Ninth Circuit opinions is appropriate pursuant to Ninth Circuit Rule 36-3(b).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 16) is denied;
2. Defendant's cross-motion for summary judgment (Dkt. No. 17) is granted; and
3. The decision of the Commissioner of Social Security is affirmed.

Dated: September 4, 2015

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.soc sec\bowen0215.ord.docx